UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-CR-10307-DJC |
| | ) | |
| TYSON TU, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Hiding behind a computer and while using the internet, defendant Tyson Tu received and possessed numerous child sexual abuse material ("CSAM") images and videos. By his criminal actions, he has re-victimized and exploited minor children. These are not victimless crimes. Real children have been victimized because of the defendant's criminal actions. The facts of this case are serious and call out for a significant sentence. For the reasons outlined below and to be articulated at the sentencing hearing, the government respectfully requests that this Court impose a sentence that includes a term of incarceration of 87 months a mandatory minimum period of 5 years of supervised release.[1] Pursuant to 18 U.S.C. §§ 2259 and 3663A, restitution is mandatory.[2]

---

[1] The government also recommends a mandatory special assessment of $200; an additional special assessment of $5,000 per count pursuant to 18 U.S.C. § 3014(a)(3) (the "JVTA assessment"); a further special assessment of up to $35,000 for Count One and up to $17,000 for Count Two, pursuant to 18 U.S.C. § 2259A (the "AVAA assessment"); mandatory restitution for the various series victims; and forfeiture. Further, pursuant to the Sex Offender Registration and Notification Act and the laws of the Commonwealth of Massachusetts, the defendant is required to register as a sex offender following his incarceration and to keep that registration current.

[2] The government intends to file a separate restitution memorandum under seal that addresses the restitution amounts requested in this case together with restitution materials. The government previously provided defense counsel with documentation for restitution requests submitted on behalf of the following 11 identified minor series victims in this case: "Best Necklace," "8Kids4," "BluePillow1," "JBN Flowers1," "Jenny," "Lighthouse1(Maureen)," "Marineland1(Sara)," "SweetWhiteSugar," "Tara," "Vicky," and "HG1." Seven additional series victims have been identified in this case, but to date, they have not requested restitution. Those series victims' include the following: "Bright Pink Toddler," "CrossTattoo," "Jan_Feb," "LeopardTight," "Mona2," "Mother Full 20121," and "Pink Paint1." U.S. Probation attached the VIS of these 18 victims to the final PSR issued on August 3, 2023.

The government suggests its below-guidelines recommended sentence is fair, reasonable, appropriate and warranted in this case and comports with the factors outlined in 18 U.S.C. § 3553(a).

## I.    SENTENCING GUIDELINES/GUIDELINE CALCULATIONS

### A.    Legal Framework

The advisory United States Sentencing Guidelines ("Guidelines" or "USSG") are "the starting point and the initial benchmark" in sentencing. *Gall v. United States,* 552 U.S. 38, 49-50 (2007). The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a). *Id*. at 49-50. Because each case is unique, the Court must make a particularized analysis of the nature and circumstances of the offense and the defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). The Court must then impose a sentence that sufficiently reflects the seriousness of the crime, promotes respect for the law, and provides just punishment, and the sentence should adequately deter criminal conduct, protect the public, and provide any necessary education, training or treatment. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(D). The Court must also strive to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). After determining the appropriate sentence, the Court should adequately explain its rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing." *See Gall*, 552 U.S. at 50.

### B.    Procedural History/U.S.S.G. Calculations

On October 14, 2021, a two-count indictment charging the defendant with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), was returned. ECF No. 1.

On May 17, 2023, the defendant pled guilty to both counts of the indictment. The defendant faces a statutory maximum sentence of twenty years on his conviction for Receipt of Child Pornography with a 5 year mandatory minimum sentence and faces a statutory maximum of 20 years on the Possession of Child Pornography conviction. Additionally, the sentencing guidelines and statutory term of supervised release require a term of 5 years up to life on each count. *See* cover sheet of PSR and ¶¶ 95, 98 of PSR, as well as 18 U.S.C. § 3583(k).

A final Presentence Investigation Report ("PSR") was issued by U.S. Probation on August 3, 2023. The PSR determined the adjusted offense level to be 37, after including all relevant sentencing enhancements and grouping principles.[3] *See* PSR ¶¶ 48-57. That adjusted offense level is calculated as follows: base offense level is 22 (U.S.S.G. § 2G2.2); a two level increase to the offense level as the materials involved a prepubescent minor or a minor who had not attained the age of 12 years old (U.S.S.G. § 2G2.2(b)(2); a two level increase as the defendant knowingly engaged in distribution, (in this case, by the defendant's use of Bit Torrent software peer-to-peer file sharing network that allows a user with the software the ability to share digital files with other users)(U.S.S.G. § 2G2.2(b)(3)(F)); a four level increase as the offense(s) involved material that portrays sadistic or masochistic conduct or other depictions of violence; or sexual abuse or exploitation of an infant or toddler)(U.S.S.G. § 2G2.2(b)(4)(A)); a two level increase as the offense(s) involved the user of a computer (U.S.S.G. § 2G2.2(b)(6)); and a five level increase as the offense(s) involved 600 or more images (U.S.S.G. § 2G2.2(b)(7)(D)). This results in an adjusted offense level of 37. *See* PSR ¶¶ 47-57. With a three-level reduction for acceptance of responsibility, the total offense level ("TOL") is 34. *See* PSR ¶¶ 59-61. The

---

[3] Counts one and two are grouped together for guideline calculation purposes per USSG § 3D1.2(d).

defendant has no criminal history points which establishes a criminal history category ("CHC") of I. *See* PSR ¶¶ 63-66. Based upon its computation the defendant's TOL as 34 and his CHC as I, the U.S. Probation Office has computed an advisory guidelines sentencing range ("GSR") of 151-188 months; and the guidelines range of supervised release is five years to life. *See* PSR ¶¶ 65, 96, 98. The government agrees with the advisory guideline calculations as outlined in the PSR.

## II.    DISCUSSION OF 18 U.S.C. § 3553 FACTORS

The government asserts its recommended sentence accounts for the factors that the Court must consider outlined in 18 U.S.C. § 3553(a). The factors include, but are not limited to, the nature and circumstances of the offenses, the history and characteristics of the defendant, the seriousness of the offenses, promoting respect for the law, providing just punishment for the offenses, the need to deter the defendant and others, the need to protect the public from the defendant's crimes, and the need to avoid unwarranted sentencing disparities**.**

### A.    The Nature and Circumstances of the Offenses

The government urges the Court to consider the nature and circumstances of the offenses, to recognize the seriousness of his crimes, to assess the crimes for what they are, and for the negative impact they have to the child victims. *See* 18 U.S.C. § 3553(a)(1). The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 7-41 of the PSR, as well as the addendum to the final the PSR issued on August 3, 2023 (at pp.33-35 of the final PSR).

In May 2020, the defendant was identified as the subscriber of a particular IP address in Sudbury, Massachusetts, that was downloading child pornography from a peer-to-peer file sharing network. During an April 2021 search of the defendant's residence, multiple electronic devices were seized – one of which was actively downloading from BitTorrent and sharing child

pornographic files at the time. Defendant was sitting in front of his running computer when police entered the residence. Three of the defendant's seized devices contained child pornography files. Two of them, an Acer desktop and a Seagate Backup Plus Portable Drive, were seized from the area of the desk the defendant was sitting at when law enforcement entered the residence, while the third, a cell phone, was recovered from the defendant's person.

The vast majority of the CSAM files were located on the Acer desktop and BitTorrent peer-to-peer program was running and actively downloading CSAM files at the time of the search warrant execution. The defendant was logged into his account on the Acer Desktop when agents entered the residence. The CSAM files found on the Acer primarily consisted of CSAM videos. The defendant's child pornography collection consisted of approximately 95 CSAM videos and approximately 1,000 CSAM images. During the on-site forensic preview of the Acer Desktop conducted by HSI, in addition to the CSAM files found, the triage software used by HSI has a database of hash files of known CSAM files and 257 hashes values of note (i.e., digital footprint of a file that makes it unique) were identified on the Acer Desktop as well as 125 identified keywords of files related to child exploitation material. Some of those keywords included young ages (1yo through 10yo), baby, child, jailbait, molest, penetrate, pthc (i.e., "preteen hardcore"), underage, tara, and vicky.[4] *See* Addendum to final PSR at pp.33-34.

HSI also confirmed that there were recently opened files containing names associated with CSAM located on the Acer Desktop. Some of the CSAM found on the Acer Desktop was contained or buried within a work document. The browser history in both the Acer Desktop and

---

[4] Both "Tara" and "Vicky" are two of the series victims identified in this case.

Seagate Backup included the phrase "pthc" as well as ages of children.  *See* reference to Capture 6 referred to in Addendum to final PSR.

Noted in the running BitTorrent client on the Acer Desktop were several folders and files that had been successfully downloaded to the computer using the peer-to-peer software. Two of these folders were located in the Downloads directory of the defendant's user account. Contained within those folders were numerous videos of varying ages to include primarily teen and pre-teen pornography. Several of the video folders depicted CSAM, including the following:

File Path: Acer\Users\tyson\Downloads\0122\(Pthc) !!! NEW !!! MOV08828.avi
File Name: (Pthc) !!! NEW !!! MOV08828.avi
The file depicts a naked female child, approximately 5-7 years old in a bath tub performing oral sex on an adult male.

File Path: Acer\Users\tyson\Downloads\0122\(pthc) Mossi(11yo) Dad Says I Come First.avi
File Name: (pthc) Mossi(11yo) Dad Says I Come First.avi
The file depicts a naked pre-pubescent child age approximately 6-10 years old laying on a bed. An adult male penetrates the child's vagina with his penis.

File Name: Acer\Users\tyson\Downloads\t15\board_nhso-05-12-04-13 yo andrea masturbating w hairbrush.avi
File Name: bored_nhso-05-12-04-13 yo andrea masturbating w hairbrush.avi
The file depicts a naked teen female aged approximately 12-15 years old masturbating using a hairbrush.

On-site forensics recovered the "Browser History" tab located on the Acer device.  There are multiple documents in that bookmark data section where the letters/phrase "pthc" is listed, including as recently as April 2, 2021, which was only 11 days prior to the execution of the search warrant.  *See* Addendum to final PSR – See Addendum to PSR at p. 34 (capture 4).

During the on-site forensic preview of the Seagate Backup, agents confirmed the external drive was not connected. Agents determined CSAM videos had been saved to the hard drive of the Seagate Backup and were saved with different file paths. HSI located a folder entitled

"Keepers" that was located in a file path on the Seagate Backup.  The file path to one CSAM

video recovered from the Seagate Backup was as follows:

File Path:  E:\Root\Books\Horror\King, Stephen\Bestiary Alien Camera\Cams\Keepers\.
Inside the file labeled "Keepers" were videos, including the following 2 CSAM videos:

File name:  2crazy14oldchickz1.mp4
The video depicts two minor females, approximately 11-14 years old, naked from the waist
down, and at one point in the video, the minor females are topless, using their hands to cover
their breasts.  At certain points in the video, the minor females expose their vaginas, and at one
point, one of the minor females is observed masturbating.

File name:  atlolis.avi
The video depicts multiple females under the age of 18, exposing their breasts, and at some point
in the video, a minor female pulls her underwear down and exposes her vagina and no public hair
is observed.


Another CSAM video that was located on the Seagate Backup device had the following file path:

E:\Root\Books\Horror\King, Stephen\Bestiary Alien Camera\Stuff\.
File name:  PTHC 1.wmv
This video depicts a naked pre-pubescent female with undeveloped breasts engaged in sexual
acts with older males and females. There is also a prepubescent male depicted in the video
engaged in similar sex acts with various females and males.

   On the date of the search warrant execution, post-*Miranda*, the defendant agreed to speak

with authorities. Among other things, he confirmed being the only user of his work laptop, his

personal computer and its desktop, and stated that nobody else uses his electronic devices; he

stated that he has external hard drives as well; and, admitted that he uses BitTorrent to look for

pornography. When asked if his search terms for porn were reflective of age, the defendant

replied "potentially" and indicated that he "looks at all sorts." HSI advised the defendant that the

age range of the children involved this investigation were from as young as approximately 3

years old to as old as approximately 16-18 years old and HSI commented that 3 years old is very

young and asked the defendant if he had seen anything like that, or a video file of someone that

young. Defendant responded, "I can't say.  Um, if I did I would have deleted or gotten rid of it."

The defendant indicated that's not what he's looking for. When asked the youngest age that he searched for online was, the defendant responded "18". HSI asked the defendant if he ever came across a 15, 16 or 17 year old when he's been searching on line and the defendant responded that doing anything with girls that age is definitely wrong. The defendant denied sharing child pornography.

Authorities asked the defendant what the search criteria for the files was and the defendant replied that he thought it was "web cams" but couldn't remember specifically. Law enforcement determined that "cams" was one of the folders on one of the file path of the Seagate Backup which contained CSAM. The defendant also told authorities that he often downloads large files but does not go through them.

Agents asked the defendant when he's searching for stuff on the BitTorrent network and he's grabbing downloads that he agrees to be child pornographic, why he would go back and continue to use the program if that was the case. The defendant responded that he "doesn't have a good answer for that." HSI informed the defendant that they located some child pornography files in the recycle bin of the defendant's computer. Agents asked the defendant why he didn't take any other steps to permanently delete the files from that bin. In response, the defendant responded that he guessed he hadn't had a chance to. The evidence clearly demonstrates the defendant knew exactly what he was doing.

On a later date, a further forensic examination of the three devices was conducted and CSAM was found on all three devices. The cell phone contained approximately 10 CSAM files. The defendant's overall child pornography collection consisted of approximately 95 CSAM videos and approximately 1,000 CSAM images, some as young as toddlers. The child pornographic files consisted primarily of minor girls, including files depicting prepubescent

children or children who had not attained age 12, and included files depicting oral, vaginal and anal penetration of minor children's vaginas or anuses by adults, masturbation by minor children, as well as objects being inserted into the vaginal area of minor children. HSI also recovered toddler CSAM files as well as sadomasochistic CSAM files videos from a device(s) seized.

HSI submitted the hash values of identified CSAM files located on the devices to the National Center for Missing and Exploited Children ("NCMEC") and to date, approximately 148 series victims have been identified.

The facts of this case call out for a sentence that is higher than the statutorily prescribed 60 month mandatory minimum sentence for a conviction of Receipt of Child Pornography.

**B.      History and Characteristics of the Defendant**

This 51 year old defendant was raised under stable socio-economic circumstances, and did not endure any financial hardships growing up.  *See* PSR ¶ 70.  He is highly educated as he graduated from high school in 1989, graduated from college with a degree in psychology in 1993, and obtained his PhD in neuroscience in 2000.    PSR ¶¶ 83.  He has been gainfully employed in a professional capacity, both in California and thereafter, for the past several years, in Massachusetts.  PSR ¶¶ 85-88.  Yet, per, his evaluation by a medical professional, he first viewed child pornography when he lived in California and continued to view child pornography until his arrest for the instant offense (i.e., October 2021), as he was "intrigued" by the images. PSR ¶ 77.  In his interview with U.S. Probation for purposes of the PSR, the defendant also related that he has a great deal of remorse. PSR ¶ 80.

Information relative to the defendant's mental and emotional health and diagnoses, including treatment the defendant received while he was out on pretrial release in this case, is outlined in more detail the PSR at ¶¶ 75-82.  The government was previously made aware of some of that information by prior defense counsel and has considered it in fashioning its

recommended sentence. Nonetheless, it is important to remember that real children have been victimized because of the defendant's criminal actions. He knew exactly what he was doing when he committed these crimes and he clearly knew right from wrong when he decided to repeatedly exploit children.

The fact that the defendant comes before this Court with no prior record is not a mitigating factor in the context of these offenses. The defendant's record, or lack thereof, was taken into consideration in the calculation of his criminal history category. *See, e.g., United States v. Oberg* 877 F.3d 261 (7th Cir. 2017)(district judge properly noted that defendants in child pornography cases often have limited criminal histories).

**C.    The Requested Sentence Is Needed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, to Provide Just Punishment for the Offenses, Afford Specific and General Deterrence, and to Protect the Public from Future Crimes of the Defendant**

One hundred and forth eight series victims have been identified in this case, and eighteen of those victims have submitted VIS that have been provided to defense counsel, U.S. Probation and to the Court. Their lives have been impacted by the receipt and possession of the CSAM files depicting their abuse. The seriousness of the crimes for which the defendant now stands convicted cannot be underscored or minimized. He received and possessed CSAM, namely, at least a thousand CSAM images and approximately 95 CSAM videos. He has negatively affected the lives of minor children through his criminal acts. In examining the seriousness of the offenses, the Court must review the harm to the victims. *See United States v. Cunningham*, 680 F.Supp 2d at 844, 855 (N.D. Ohio, 2010). Each time a sexually explicit image or video of a child is viewed, accessed, possessed, received, sent or produced, that minor child is being re-victimized.

As evidenced by the various VIS's submitted in this case, the defendant's criminal actions had a profound negative impact on the victims. The continuing impact the defendant's crimes have had on his victims is reflected in the multiple submitted VIS's. The devastating toll this case has taken on these minor victims is enormous and best summed up by the VIS's submitted in this case. Below are portions of some of the VIS's that were submitted to the Court.

In her victim impact statement, minor victim Lily of the HG1 series, who is now 20 years old, wrote in part:

"When I was 15, I was exploited by a serial online predator from the United Kingdom. He manipulated me into sending thousands of images and videos in order to profit off of my exploitation.  After about a week of constant harassment, I could not take it anymore and cut all contact to escape the torture.  Because I ignored and blocked him he (sent) images of me to the dark web, which then ended up on platforms like Facebook YouTube, Twitter, Reddit, Instagram, and pornography websites.  These child abuse materials were duplicated and distributed thousands of times before law enforcement could take some if it down…After the content was posted to social media, I deleted all of my accounts, left my school and moved to an online schooling platform.  I could not bear to face everyone at my school, many of whom saw the images of my victimization.  I lost a lot of friends during this time,, and I hardly left my parents' house for about a year.  I never felt safe in my house because I was reminded of what happened, but I also could not leave in fear that I would be recognized.  I was also receiving messages from strangers saying that I was "disgusting" a "whore," that I should be "ashamed of myself,' and that  I "should kill myself."  I took this to heart…

My inability to be on social media makes me feel disconnected from my peers, and people in school have questioned why I am not on social media.  At school, I struggle to meet new people, anxious that they know about my victimization and are judging me…This event and the constant reminders of it have influenced my decision to not go to medical school, to not have children, and to not live anywhere near where I grew up.  I don't want to have to have my life taken away from me again or harm others that are associated with me.  I just wish I could be a normal person again and I don't know if I'll ever get that life back."

In her victim impact statement, minor victim Sweet White Sugar/Pia's mother wrote, in part:

"How has this crime impacted my child's general wellbeing?  A crime of this magnitude has had an enormous emotional effect on my child.  My child's life has been changed forever.  She is very aware of the images and videos that were produced and distributed online.  She is aware of the seriousness and vastness of this crime.  This crime creates a crippling insecurity in her and makes her worried and extremely upset.  The fear consumes her daily…She is embarrassed and humiliated, knowing that images that portray her in a sexual manner are available for others to see.  She is afraid, as am I, that she will be recognized by those who have downloaded the images of her abuse…She doesn't want to be defined as a victim but she cannot escape her victimization, and she can never put it in the past because it is ongoing….The defendant has damaged, demeaned and de-valued my child…

To the defendant:…Unfortunately, it's apparent that you and people like you selfishly pursue your own self-interest with no regard for the harm inflicted upon my child….No court order can restore what you have taken from her – and what she is exposed to by the continuing circulation of her images to others, with no regard for her, as a child, as a person…"

In her victim impact statement, minor victim "Jenny" writes, in part:
"I was only seven when my predator began molesting me and photographing me.  It went on for two years before they found him on the internet sending pictures of me to men…[I] worry about the pictures of me that are out there and I hate that others see them.  I have feared over the years that someone would recognize me in public.  I wish only that ever single one can be found and destroyed someday.  It is upsetting thinking about them and I want them to go to jail for doing it…"

In her victim impact statement, minor victim Jan_Feb's mother wrote, in part:
"…All those who trade these images and thereby created the demand for lurid and violent depictions of children are participants in the exploitation of my daughter.  Each traded picture that places a value on inventiveness, novelty, or cruelty played a role in egging on the abuse to even more vile acts…Regardless of whether they directly abused children themselves, reveled in the images of suffering, or persuaded others to abuse children on their behalf (to provide images of the abuse) each participant has a responsibility for the effects…"

In her (2013) victim impact statement, minor victim Vicky wrote, in part:
"…I have recently gotten married and with this change to a new stage in my life I have found that I have a new set of emotional challenges.  I also have a step daughter who is just two years old.  I see myself in her in so many ways and this triggers many concerns II have about keeping her safe given the amount of people who are downloading images of me…"

These, and all the other minor victims in this case, are not abstractions or objects—they are real people who experienced sexual exploitation for these pictures or images to be received, possessed, distributed, produced or accessed. A significant term of imprisonment reinforces to the defendant and to others who are tempted to follow in his footsteps, that this crimes are exceedingly grave in nature, should act as a deterrent, and would promote respect for the law and to protect the safety of the public, and in particular, children, who are the most vulnerable victims in society. Imposing serious penalties on those who receive and possess child pornography serves the interests of all the minor victims in this case. The government appreciates that it is difficult to quantify in months or years "how much" is "enough" to satisfy

the goals of sentencing. A sentence greater than the 60 month mandatory minimum is warranted here. Although the government's recommended sentence is below the low-end of the advisory guidelines range, it is still a significant sentence that government suggests is appropriate and reasonable, will adequately punish the defendant for his criminal conduct, act as a deterrent to the defendant and others who commit similar crimes, and promote respect for the law. *See* 18 U.S.C. § 3553(a).

## III.    CONCLUSION

For all the foregoing reasons, the government respectfully recommends that this Honorable Court impose a sentence of 87 months followed by 5 years of supervised release. This sentence would be sufficient, but not greater than necessary, to account for the defendant's criminal conduct and to accomplish the goals of § 3553(a).

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:    */s/ Suzanne Sullivan Jacobus*
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

Dated: August 3, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and thereby served an electronic copy on counsel for the defendant.

*/s/ Suzanne Sullivan Jacobus*
Suzanne Sullivan Jacobus
Assistant U.S. Attorney